116 675
131 635

E. O. ARMOUR v. THOMAS OFFICER, Trustee, Appellant.

ASSESSMENT OF TAXES: *Insufficient description of realty.* Under Code 1873, section 821, requiring land to be assessed "by township, range, section or part of section, and when such part is not a congressional division or subdivision, some other description sufficient to identify it," land which had no buildings on it, and was not occupied by the owner, but leased for agricultural purposes, and not generally known by any particular name, was not sufficiently described in an assessment as "part of section in southwest ¼ N. E. ¼ section 27, township seventy-five, range 44; acres, eighteen; value, $1,200."

*Appeal from Council Bluffs Superior Court.*—HON. E. E. AYLESWORTH, Judge.

THURSDAY, JANUARY 30, 1902.

THE plaintiff's land was first conveyed as a tract out of the government subdivision of 160 acres in 1861 by the following description: "The west end of the north half of the south half of the northeast quarter of section 27—75—44, commencing at a stake below the ridge of the aforesaid piece of land, on the south side, and running parallel with said ridge to a stake on the north side of the aforesaid piece of land,— containing eighteen acres, be the same more or less." It was again conveyed by like description in 1864 and 1865 and in 1868 to Ezra Martin, under whom Emily Martin took by will in 1877. She owned it until September 4, 1894, and then conveyed it to Mary M. Emig, inserting in the deed the foregoing description, with this added: "More particularly described as follows, to wit: Commencing at the northwest corner of said north one-half of the south one-half of the northeast quarter of section 27, township 75 north, of range 44 west of the 5th P. M., and running thence east along the north line of said 40-acre

tract eleven hundred ninety-two and ninety-five one-hundredths (1,192.95) feet; thence south six hundred fifty-nine and five tenths (659.5) feet, or to the south line of said north one-half of the south one-half of the northeast quarter of said section 27; thence west along the said south line eleven hundred ninety-four (1,194) feet, or to the southwest corner of said 40-acre tract; thence north six hundred sixty-one and ninety-five one-hundredths (661.95) feet, or to the place of beginning containing 18.1 acres, more or less, and shown by the certificate and plat of survey this day made by Messrs. Judson & Cook, surveyors, which said certificate and plat are hereto attached, marked 'Exhibit A,' and made a part of this deed." During the same month this grantee conveyed to the Union Land & Improvement Company, and subsequently, July 16, 1898, the plaintiff acquired the land by the same description, through foreclosure proceedings against Emig or that company, under sheriff's deed. The assessment claimed to have been made of this land in 1893 for that and the next year was to Emily Martin, as owner, and described as "part of section in southwest $\frac{1}{4}$ N. E. $\frac{1}{4}$ section 27, township seventy-five, range 44; acres, eighteen; value, $1,200." The entire tract was sold by this description at the tax sale December 2, 1894, to Thomas Officer, trustee, to satisfy the taxes of 1893, and he paid those subsequently levied. The plaintiff prayed that the treasurer be restrained from issuing a tax deed, owing to the indefinite description of the land sold, and that the certificate be held not to affect the title, and offered payment of taxes found justly due. The defendant, Officer, insisted upon the sufficiency of the description when aided by extrinsic evidence, and upon his right to a tax deed. Decree was entered permitting plaintiff to pay the amount necessary to redeem, which was done, and thereupon title was quieted in her. The defendant appeals. —*Affirmed.*

*Pusey & McGee* for appellant.

*W. S. Baird* for appellee.

LADD, C. J.—It will be observed from the foregoing statement of facts that prior to the deed of Emily Martin, on September 4, 1894, an examination of the premises would have been necessary to locate the tract of land in controversy. Her deed pointed it out somewhat more definitely as the west 18.1 acres of the north $\frac{1}{2}$ of the south $\frac{1}{2}$ of the quarter section, with the north side 1,192.95 feet long, and the south side 1,194 feet; the east end 695.5 feet wide, and west end 661.95. But nothing in the assessment or sale indicated the part of the 40 acres intended. For all the record disclosed, it may as well have been in the south $\frac{1}{2}$ as the north $\frac{1}{2}$, in the east as well as the west; for the description, "part of section in southwest $\frac{1}{4}$ northeast $\frac{1}{4}$ section 27; * * * acres, eighteen,"— furnishes no clew from which its location could be ascertained. Nor is its form or any of its boundaries or monuments indicated. An infinite number of 18-acre tracts can be surveyed in the 40, no two alike. It may be that such a description would suffice if contained in a contract or conveyance between individuals, for possibly extrinsic evidence could be received to point out the subject of their agreement. But in the assessment and sale for taxes the intention of the owner is in no way involved. The government is in a hostile attitude with respect to the collection of its dues, and the statutes conferring .powers on officers with respect thereto must be complied with. Blackwell, Tax Titles (5th Ed.), section 157 *et seq.* See *Wofford v. McKinna*, 23 Tex. 36 (76 Am. Dec. 53). The statute in force at the time required the land to be assessed "by township, range, section or part of section, and when such part is not a congressional division or subdivision, some other description sufficient to identify it." Section 821, Code 1873. In *Roberts v. Deeds*, 57 Iowa, 320, the description was, "northwest part northeast section 31 * * * containing therein three acres," but the only land Deeds owned in the 40 extended across it; and, in holding the deed void for uncertainty, the court said of the description: "It con-

tains no data from which the locality of said land can be discovered. * * * The description does not call for either monuments or boundaries. It is applicable to an indefinite number of tracts of three acres which do not touch any line of the forty, or have a corner common therewith." This description was held insufficient,—not, as contended, because inapplicable to the land owned by Deeds, but for the reason that it did not point out any land "sufficient to identify it." See, also, *Tucker v. Carlson*, 113 Iowa, 449. In *Judd v. Anderson*, 51 Iowa, 345, and *Immegart v. Gorgas*, 41 Iowa, 439, the assessments locate tracts of a given number of acres in described corners of 40's; and thus these corners become fixed monuments, and the government lines boundaries. In *Soukup v. Investment Co.*, 84 Iowa, 448, "west part northeast quarter northwest quarter twenty acres," in a named section, was held to identify the west 20 acres. In *Blair Land Co. v. Scott*, 44 Iowa, 143, the tax deed described 15 acres in the "south side southeast quarter of southwest quarter" of the section; and it was said on rehearing that if the person in whose name it was assessed "owned only 15 acres in the southeast southwest section 2, and that these 15 acres were on the south side of said forty acres, then the assessment and sale of the 15 acres owned by John I. Blair in said forty was an assessment and sale, in fact, of 15 acres in the south side of said forty, and authorized the execution of the deed." But the evidence did not so show. Naming any number of acres on any particular side of a 40 may furnish the data from which a definite description might be ascertained. Extrinsic evidence is not admissible to wholly supply a description. It is received, "not for the purpose of adding to or varying the description contained in the description of purchase, but of applying that description to its subject-matter." *Judd v. Anderson, supra.* Or, as better said in *Greene v. Lunt*, 58 Me. 518: "Parol proof may be resorted to for the purpose of

applying the terms of the description to the face of the earth, but no further. It cannot supply any deficiency in the buts and bounds. These must be ascertained from what is written, and from that alone. We may suppose, as contended in the argument that the assessors intended to assess the lot or portions of the lot owned by the person taxed, or we may learn that fact from those officers themselves. But this is not a question of intention, but one of fact. What did they do? What is the specific lot upon which the tax is made? Until we can answer these questions, and from the record, we are utterly unable to ascertain the lot to which the lien attaches, and the one to be sold." Again in *Stewart v. Aten's Lessee,* 5 Ohio St. 257, the description was 150 acres in the northwest part of a section, and, as the land was not in a square, this was held insufficient. The court, in the course of the opinion, said: "Proof that the person named as owner in fact owned 150 acres somewhere in the northwest part of the section has never been permitted or recognized as a mode of helping out a defective description in a tax duplicate." The description in the assessment roll is the basis of and is necessarily followed in the advertisement for sale, certificate of sale, and tax deed. Its purpose is threefold: First, to advise the owner of the claim that is made on him or his property; second, to apprise the public, in event the tax is not paid, of the particular property on which it is a lien, and which will be sold; and, third, to enable the purchaser to obtain a sufficient conveyance. *Lafferty's Lessee v. Byers,* 5 Ohio, 458; Cooley, Taxation (2d Ed.) 405; Blackwell, Tax Titles (5th Ed), section 224. If these objects are to be attained, the description must not be only such as to inform the owner that the tax on his land is unpaid, but also that the purchaser may know or learn the precise tract intended, and be able to estimate its actual value. The person who will pay the taxes delinquent for the smallest fraction of the tract or parcel becomes the purchaser. Section 1423, Code. It is of the highest importance, then, to

the owner, that the bidders know from the description what is being offered for sale, as he is interested in having the smallest portion sold to satisfy the tax lien. Undoubtedly designation by a name usually applied to the land may sometimes be sufficient to identify it, and, where the owner has furnished the description, he may not thereafter complain of its indefiniteness. Here the plaintiff's land had no buildings on it, was not occupied by the owner, but leased for agricultural purposes, and does not appear to have been generally known by any particular name. There was nothing in its use or ownership to aid in its identification. Nothing in the description pointed out the situation of the land in the 40. Without resort to the records, and proofs that Emily Martin owned a certain 18 acres, and that only in the 40, no one would have had any notion of the locality of that assessed, or been able to estimate its value. Unless the plain language and evident intent of the statute are to be disregarded, the description must contain in itself sufficient facts, when applied, to fix upon the particular tract intended; and it is not incumbent on any one to search through the records to ascertain whether the owner in whose name the assessment was made might have had another parcel of like number of acres within the same government subdivision. Such statutes must be complied with, in order to make a valid assessment. They confer on the officer the power to act in hostility to the owner, and unless the description is not only enough to inform the owner of the jeopardy of his land, but sufficient to apprise third parties of the land intended to be levied on and subjected to the burdens of the public revenue, it does not identify the tract as required. This case illustrates the necessity of such a rule. The plaintiff's land is admitted to be worth $18,000, and yet, under the description in the sale record, was sold in its entirety for less than $80. That such descriptions have quite generally been held insufficient appears from the darge number of authorities collected in Blackwell, Tax Titles (5th

Ed.), section 227 *et seq.* But much necessarily depends on the wording of the statute. The rule was too broadly stated in *Blair Land Co. v. Scott, supra.* Evidently the distinction between what is required as between parties to a contract and in a tax deed, was not given attention when the court found the description defective in either event.—AFFIRMED.